O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                              Not Present

**Proceedings:** (In Chambers) Order on Defendant's Motion for Summary Judgment

Pending before this Court is Defendant's Motion for Summary Judgment. On October 6, 2008, the Court heard argument on the Motion. After considering the moving and opposing papers, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

I.    BACKGROUND

The plaintiff in this case, Gartner, Inc. ("Gartner"), provides fact-based consulting services to help its clients use and manage information technology ("IT") to enable business performance. The defendant, on the other hand, is Stradling Yocca Carlson & Rauth ("SYCR"), a California law firm that owns a majority interest in another defendant in this case, Stradling Global Sourcing, LLC ("SGS").[1] Like Gartner, SGS provides consulting services.

According to Gartner, between March 2006 and October 2006, Kevin Parikh, Jay Priday, Robert Randolph, and Michael Andersen – all of whom were, at one time, vice-presidents at Gartner[2] – began conspiring with SYCR to misappropriate Gartner's trade secrets and clients.

---

[1]This lawsuit actually contains nine defendants. Seven of these defendants are natural persons while two of these defendants are business entities. For ease of presentation, when discussed as a collective, the natural defendants will be referred to as the "Individual Defendants" while the entity defendants will be referred to by their chosen names.

[2]For ease of presentation, these four Defendants will be referred to as the "VP Defendants."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

At the end of October 2006, all four VP Defendants simultaneously, and without prior notice, resigned from Gartner. Almost immediately thereafter, the VP Defendants announced the formation of, and their involvement with, SGS.

On November 22, 2006, Gartner filed the instant case, alleging a dozen claims against nine different defendants. SYCR's liability in this action is premised on various theories, all of which can be grouped into two broad categories: direct liability theories and vicarious liability theories. The direct liability theories relate to four different Causes of Action: (1) violation of the Uniform Trade Secrets Act; (2) tortious interference with contract; (3) tortious interference with prospective economic advantage; and (4) unfair trade practices. The vicarious liability theories come in three varieties: conspiracy, joint venture, and agency.

Presently before the Court is SYCR's Motion for Summary Judgment. The other eight defendants have decided not to join this Motion and instead have filed a separate motion for summary judgment. For the reasons set out below, the Court GRANTS IN PART and DENIES IN PART SYCR's Motion for Summary Judgment.

II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

III.     DISCUSSION

Gartner's Causes of Action can be grouped under two broad umbrellas – those that are pursued under a direct liability theory and those that are pursued under a vicarious liability theory. Accordingly, the following discussion follows this general structure.

   A.     Direct Liability Theories

      1.     Gartner's UTSA Claim

The Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code §§ 3426-3426.10, codifies the basic principles of common law trade secret protection. According to Gartner, SYCR violated the UTSA when it allegedly misappropriated the following trade secrets:

(1) a document prepared by Parikh and emailed to SYCR on May 9, 2006, entitled "Deal Pipeline";

(2) another document containing projected monthly sales data based on Gartner's "current engagements" and "current" and "future pursuits." Like the Deal Pipeline, this document was emailed to SYCR by Parikh on May 9, 2006;

(3) a presentation called "Project Greenfield," which supposedly contained data taken from Gartner's "Sourcing Engagement Staffing, Opportunity, Activity, and Risk" reports ("'SOAR' reports"). Parikh allegedly emailed this presentation to SYCR on March 17, 2006 and then again on May 23, 2006.

(4) a spreadsheet containing nonpublic information about current client engagements and the likelihood that the VP Defendants could "transition" those clients to SGS. Parikh allegedly emailed this spreadsheet to SYCR on May 9, 2006; and,

(5) a document containing client contract renewal information, such as which Gartner clients were "ready to resign [sign again] and renew" their contracts with Gartner. Parikh emailed this document to SYCR on June 23, 2006.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

a. <u>Whether the Documents That Gartner Claims SYCR Misappropriated Are Trade Secrets</u>

There can be no claim for misappropriation of trade secrets if there are in fact no trade secrets. Accordingly, a court's first step in addressing an UTSA claim is to determine if the information allegedly misappropriated is a trade secret.

As used in the UTSA, two elements define a "trade secret": it must be "information" that (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and, (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d)(1)-(2). While the UTSA provides a concise definition of what constitutes a trade secret, it is important to remember that, ordinarily, whether information is a trade secret constitutes a question of fact. *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 128, 224 Cal. Rptr. 456 (1986).

Importantly, a plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carries the burden of showing that they exist. *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 522 (9th Cir. 1993). In opposition to SYCR's Motion, Gartner argues that all of the documents at issue which Parikh emailed to SYCR are trade secrets. This contention is evaluated in relation to each document.

i. <u>The "Deal Pipeline"</u>

The "Deal Pipeline" document contains contract information relating to existing Gartner clients, such as the original contract value, the remaining contract value for work still to be performed, start and expected end dates. *See Declaration of Marc Epstein* ("*Epstein Decl.*"), *Exh. 209*. Additionally, the document contains a list of clients that Gartner is pursuing or intends to pursue.[3] *Id.*; *Declaration of William Kumagai* ("*Kumagai Decl.*"), ¶ 23.

Gartner has produced testimony that this document derives independent economic value

---

[3]In the Individual Defendants' and SGS' Motion for Summary Judgment this Court found that Gartner had provided sufficient evidence to raise a genuine issue of fact as to whether its lists of prospective clients satisfied the statutory definition of "trade secret."

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

because "if Gartner's competitors had access to this information . . .it would permit Gartner's competitors to interfere with or undercut Gartner's negotiations on future business." *Kumagai Decl.*, ¶ 23. Gartner has also produced testimony that this information is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Specifically, Gartner has introduced deposition testimony in which the deponent, Mr. Kumagai, states that the information contained in the "Deal Pipeline" document (1) can only be obtained from Gartner by logging onto a proprietary database located on Gartner's servers; (2) access to that database is restricted to authorized personnel who must enter a password to access the system; and (3) each Gartner employee signs a written contract to maintain the confidentiality of Gartner's confidential information. *See Kumagai Decl.*, ¶ 15.

Based on the foregoing, this Court finds that Gartner has provided sufficient evidence to raise a genuine issue of fact as to whether the information contained in the "Deal Pipeline" document constitutes a trade secret.

ii. The Document Containing Projected Monthly Sales Data

Gartner has produced deposition testimony of Sanjiv Malkani, in which Mr. Malkani confirms that this document was derived from information contained in the "Deal Pipeline" document. *See Deposition of Sanjiv Malkani*, 96:10-14. As the Court has already determined that information contained in the "Deal Pipeline" document constituted trade secrets under the UTSA, it follows that information derived from that document may also constitute a trade secret. Thus, this Court finds that a genuine issue of fact as to whether this document is a trade secret. This finding is limited, however, only to those portions of this document that were derived from information contained in the "Deal Pipeline" DOCUMENT.

iii. Gartner's SOAR Reports

The "Project Greenfield" presentation contained information derived from Gartner's SOAR reports, including contract values remaining contract values and the contract termination dates for various Gartner clients. *See Kumagai Decl.*, ¶ 21. It also contained information on one of Gartner's executory contracts, such as information regarding the work to be performed, the client's needs, the value of the services, and the engagement value. *Id.* This information derives independent economic value for the same reasons that the information in the "Deal Pipeline" document derives independent economic value. Additionally, like the "Deal Pipeline" document there is evidence that the information contained in this presentation was the subject of efforts that this Court has already determined "were reasonable under the circumstances to maintain its secrecy." *See Kumagai Decl.*, ¶ 15.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

Accordingly, this Court finds that Gartner has provided sufficient evidence to raise a genuine issue of fact as to whether the information contained in the "Project Greenfield" document constitutes a trade secret.

> iv. The Spreadsheet Containing "Engagement Transition Prospects"

According to Mr. Kumagai, the information contained in the spreadsheet was similar to that found in Gartner's SOAR reports. *Kumagai Decl.*, ¶ 22. Mr. Kumagai has also testifed that the information in this spreadsheet was subject to efforts that this Court has already determined "were reasonable under the circumstances to maintain its secrecy." *Id.* at ¶ 15. Accordingly, this Court finds that Gartner has provided sufficient evidence to raise a genuine issue of fact as to whether the information contained in the spreadsheet constitutes a trade secret.

> v. Gartner's Client Contract Renewal Information

The list of clients Parikh emailed to SYCR on June 23, 2006 identified "key clients" who were "ready to resign and renew" their contracts with Gartner. *See Vol. I, Exh. 204*. It also identified the dollar amounts of the proposed renewing. *Id.*; *see also Kumagai Decl.*, ¶ 18. Gartner has produced evidence that this information would be highly valuable to competitors. Specifically, Mr. Kumagai has testified that since sourcing opportunities are in a multi-year cycle, knowing when a current or prospective client is ready for another sourcing project in that multi-year life cycle is critically important in developing business. *Kumagai Decl.*, ¶ 18. Additionally, there is evidence that the information contained in this email was the subject of efforts that this Court has already determined "were reasonable under the circumstances to maintain its secrecy." *Id.* at ¶ 15.

Accordingly, this Court finds that Gartner has provided sufficient evidence to raise a genuine issue of fact as to whether the information contained in the email constitutes a trade secret.

> b. Whether There is Evidence of "Misappropriation"

The UTSA defines "misappropriation" to include two types of conduct: (1) acquisition, or (2) disclosure or use. *See* Cal. Civ. Code § 3426.1(b). Misappropriation by way of acquisition occurs when one acquires a trade secret of another, knowing or having reason to know that the trade secret was acquired by "improper means." *See id.* at § 3426.1(b)(1). By contrast, in determining what constitutes "use" and "disclosure" of trade secrets, courts have held that mere

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

possession of trade secrets is not sufficient to satisfy this element of the cause of action. *See Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 n.5 (N.D. Cal. 2003) (citing *Gibson-Homans Co. v. Wall-Tite, Inc.*, 1992 U.S. Dist. LEXIS 21909 (C.D. Cal. 1992)).

Pointing to *Accuimage Diagnostics*, 260 F. Supp. 2d 941, SYCR argues that Gartner cannot establish a misappropriation claim against SYCR because there is no evidence that SYCR used Gartner's trade secrets. But this argument misunderstands the thrust of Gartner's claim. Gartner's UTSA claim is not a "disclosure or use" claim but an "acquisition" claim. Thus, SYCR's reliance on *Accuimage Diagnostics*, 260 F. Supp. 2d 941, is misplaced.

As noted above, one way by which misappropriation occurs is through "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ. Code § 3426.1(b)(1). "Improper means" is defined as the "breach or inducement of a breach of a duty to maintain secrecy." *Id.* at § 3426.1(a).

Gartner has produced a bounty of evidence to raise a genuine issue of fact as to whether SYCR misappropriated Gartner's trade secrets by way of acquisition. For instance, Gartner has proffered testimony that indicates that SYCR was well-aware that Parikh had executed an employment agreement with Gartner. *See, e.g.*, *Deposition of Robert J. Kane*, 14:11-24, 35:11-14 (SYCR partner conceding he had read Parikh's employment agreement). Included in this agreement were confidentiality clauses, nondisclosure provisions, and nonsolicitation provisions. *See Epstein Decl., Exh. 1*. */*It follows, then, that if SYCR knew of these agreements, it knew that Parikh was divulging information in violation of these agreements.[4] Thus, when SYCR acquired the information by way of email, it acquired the information knowing (or, at the very least, having reason to know) that Parikh was divulging information in breach of a duty to maintain secrecy. Put otherwise, Gartner has produced sufficient evidence to raise a genuine issue of fact for trial as to whether SYCR acquired Gartner's trade secrets knowing (or having reason to know) that they were obtained by improper means.

Because Gartner has produced sufficient evidence to indicate that SYCR misappropriated Gartner's trade secrets, this Court DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Twelfth Claim for Relief (UTSA claim).

---

[4]Bruce Feuchter's testimony supports this inference. *See Deposition of Bruce Feuchter* ("*Feuchter Depo.*"), 167:1-168:9 (noting that most companies would consider information contained in the "Deal Pipeline" document to be highly valuable and confidential).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

2. <u>Gartner's Tortious Interference with Contract Claim</u>

In its First Amended Complaint ("FAC"), Gartner contends that SYCR interfered with Gartner's contracts with its clients. However, in its Opposition to SYCR's Motion for Summary Judgment Gartner adds an additional layer to this tort, claiming that SYCR also tortiously interfered with Gartner's contracts with its employees.

Under California law, to prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1 (1990). Where, as here, the tortious interference with contract claim involves at-will contracts, a plaintiff "must plead and prove that the defendant engaged in an independently wrongful act." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152, 17 Cal. Rptr. 3d 289 (2004).

a. <u>Interference with Employment Agreements</u>

In its Opposition to SYCR's Motion, Gartner asserts that SYCR interfered with Gartner's employment agreements. SYCR now moves for summary judgment on this claim based on two reasons. First, SYCR argues that this theory must be ignored because Gartner never alleged this theory in its FAC. Second, SYCR contends that even assuming that Gartner can proceed on this theory, Gartner has failed to offer evidence that SYCR intentionally interfered with Gartner's employment contracts.

In support of its position, SYCR cites to *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000). However, despite SYCR's arguments to the contrary, *Coleman* does not stand for the proposition that a plaintiff can only proceed on those theories of liability raised in her complaint. In fact, in *Coleman* the Ninth Circuit was presented with the opportunity to adopt such a hard-and-fast rule to that effect, yet declined to do so. Instead, the Ninth Circuit held that even if a plaintiff failed to plead an additional theory in her complaint, she could nonetheless pursue that theory if she made it known during discovery of her intention to pursue recovery under that theory. *Coleman*, 232 F.3d at 1294.

Ultimately, though, despite misreading *Coleman* SYCR still prevails on this issue. This is because there is no evidence that (1) Gartner ever amended its FAC to include this theory, and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

(2) there is no evidence that Gartner made it known during discovery that Gartner planned on pursuing this claim in relation to the contracts Gartner had with its employees.

Accordingly, because Gartner (1) failed to plead the additional theory in its FAC and (2) did not make it known during discovery of its intention to pursue recovery under the theory omitted from its FAC, *Coleman*, 232 F.3d at 1294, this Court GRANTS SYCR's Motion for Summary Judgment insofar as it relates to Gartner's claim that SYCR intentionally interfered with Gartner's employment contracts.

b. <u>Intentional Interference with Client Contracts</u>

As noted above, to establish an intentional interference with contract claim, Gartner must prove at trial (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Electric Co.,* 50 Cal. 3d at 1126. In addition, since the client contracts at issue here are at-will, Gartner must also prove that SYCR committed an independently wrongful act. *Reeves*, 33 Cal. 4th at 1152.

It appears beyond dispute that a triable issue of material fact exists in regard to some of these elements. For instance, with respect to the first two elements, Gartner has introduced evidence that – on at least three different occasions – Parikh emailed SYCR certain documents, all of which contained confidential information relating to current Gartner clients. *See Vol. I, Exhs. 205, 206, 209, 208, & 210.* And with regard to the sixth element, this Court has already determined that Gartner has produced evidence to support a finding that a triable issue of material fact exists as to whether SYCR misappropriated Gartner's trade secrets. Since an "independently wrongful act" is any conduct which is "proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard," *Reeves*, 33 Cal. 4th at 1152, it follows, then, that a triable issue of material fact exists on the question of whether SYCR committed an independently wrongful act (here, a trade secret violation).

Interestingly, although Gartner directs this Court's attention to evidence on the first, second, and sixth elements of this claim, Gartner fails to point to any evidence on the remaining elements. SYCR is quick to point this out in its Reply. Ultimately, though, Gartner's failure to produce evidence on these elements is not fatal to its claim. This is because Gartner never in fact needed to produce such evidence. It bears repeating that before the non-moving party has the burden of establishing a genuine dispute of fact as to an essential element of its case, *Celotex*

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

*Corp*, 477 U.S. at 322-23, the moving party *first* must demonstrate the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Here, SYCR never carried its initial burden. In fact, the first time SYCR produces evidence on any direct liability theory is in its Reply. Consequently, this Court finds that because SYCR never carried its burden, the burden never shifted to Gartner. Thus, it is irrelevant that Gartner never produced evidence demonstrating a genuine issue of fact because Gartner never was required to do so.

In sum, because SYCR never demonstrated the absence of a genuine issue of fact for trial, this Court DENIES its Motion for Summary Judgment as it relates to Gartner's Fifth Cause of Action (tortious interference with contractual relations).

### 3. Gartner's Tortious Interference with Prospective Economic Advantage Claim

For all relevant intents and purposes, Gartner's tortious interference with prospective economic advantage claim mirrors its tortious interference with contract claim. Indeed, the elements of each claim are strikingly similar.[5] Accordingly, the same reasoning that applied to the latter claim applies to the former.

Therefore, consistent with the analysis laid out above, this Court DENIES SYCR's Motion for Summary Judgment on Gartner's Eighth Claim for Relief (tortious interference with prospective economic advantage).

### 4. Gartner's Unfair Trade Practices Claim

Gartner's Sixth Cause of Action is an unfair trade practices claim brought against all Defendants, including SYCR. Section 17200 of the California Business and Professions Code allows claims to be brought for "unlawful, unfair or fraudulent" business practices. An

---

[5] To prevail on a cause of action for intentional interference with prospective economic advantage in California, a plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. *Reeves*, 33 Cal. 4th at 1152 n.6. Additionally, a plaintiff must also prove that the defendant engaged in an independently wrongful act. *Id.* at 1152.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

"unlawful" business practice arises from the violation of another statute. By contrast, an "unfair" business practice "may be deemed unfair even if not specifically proscribed by some other law." *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999).

Essentially, an unfair trade practices claim is a derivative claim. *See Prachasaisoradej v. Ralphs Grocery Co.*, Inc., 42 Cal. 4th 217, 244, 64 Cal. Rptr. 3d 407 (2007). Thus, so long as the predicate claim survives a motion for summary judgment, so will the derivative claim. Here, the Court has determined that Gartner has denied SYCR's Motion for Summary Judgment as it relates to Gartner's Twelfth Claim for Relief (UTSA claim). Accordingly, the Court DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Sixth Claim (unfair trade practices).

      B.    <u>Vicarious Liability Theories</u>

In addition to asserting claims against SYCR under various direct liability theories, Gartner asserts claims against SYCR under three different vicarious liability theories. These three theories – a conspiracy theory, a joint venture theory, and an agency theory – are analyzed in turn.

      1.    <u>Conspiracy</u>

To prove a civil conspiracy, a plaintiff must establish (1) formation of the conspiracy; (2) operation of the conspiracy; and (3) damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Applied Equip. Corp. v. Litton Saudi Arabia*, 7 Cal. 4th 503, 511, 28 Cal. Rptr. 2d 475 (1994).

The gravamen of Gartner's theory is that Mr. Kane, SYCR's employment partner, instructed the VP Defendants on what they should and should not do when they resigned from Gartner. As evidence of this incident, Gartner points to a number of emails sent between various SYCR employees and the VP Defendants. For example, in an email sent from Bruce Feuchter to Numan Siddiqi, Mr. Feuchter writes: "We will agree on a script and approach for the four to leave and communicate with Gartner." *See*, *e.g.*, *Epstein Decl.*, *Exh. 193*. Mr. Feuchter later confirmed with Parikh that a "script" would be in place prior to the VP Defendants' resignation from Gartner. *See Vol. I, Exh. 251* ("SYCR and you will jointly agree on a script and approach for you with respect to such discussions and termination of employment."). Eventually Kane faxed to Parikh a "checklist" that Parikh and the other VP Defendants were to follow. *See id.*,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

*Exh. 192*.

While this evidence is undoubtedly bountiful, it misses the point. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equipment*, 7 Cal. 4th at 511-12. Accordingly, tort liability arising from conspiracy must be activated by the commission of an actual tort. *Id.* at 511. Here, Gartner predicates its conspiracy theory on a singular act, the VP Defendants' *en masse* resignation from Gartner. But for reasons set forth in the Order relating to the Individual Defendants' and SGS' Motion for Summary Judgment, this en masse resignation was not unlawful. Consequently, since there is no predicate act, there can be no conspiracy.[6]

Gartner has failed to adequately support its allegation that a conspiracy existed between SYCR and the other Defendants in this action. Accordingly, this Court GRANTS SYCR's Motion for Summary Judgment as it relates to Gartner's conspiracy theory.

    2.    <u>Joint Venture</u>

It is Gartner's contention that in addition to being directly liable, SYCR is also vicariously liable under a joint venture theory. SYCR disputes this contention on two grounds. First, citing *Coleman*, 232 F.3d 1271, SYCR argues that because Gartner failed to assert joint venture liability in its FAC, Gartner cannot pursue that theory at summary judgment. Second, assuming that Gartner can pursue a joint venture theory, SYCR argues that no evidence of an agreement to form a joint venture exists.

SYCR's first argument can be dismissed outright. As noted above, in *Coleman* the Ninth Circuit held that to pursue an additional claim under a different theory at summary judgment, the plaintiff must (1) plead the additional theory in her complaint or (2) make it known during discovery of her intention to pursue recovery under that theory. *Coleman*, 232 F.3d at 1294. Here, SYCR admits that Gartner identified its joint venture theory in discovery. *See SYCR's Pts.*

---

[6]In a last ditch effort to salvage this theory, Gartner includes one paragraph at the end of its Opposition that reads as follows: "The above evidence establishes that SYCR and the VP Defendants knowingly agreed to misappropriate Gartner's trade secrets and cause a breach of the VP Defendants' contractual duties and duties of loyalty to Gartner." *See Opposition*, 19:3-9. This just is not the case. The evidence cited to by Gartner relates only to the en masse resignation, an act that, as noted above, was not unlawful.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

*& Auth. in Support of Its Motion for Summary Judgment*, 15:26-27. Thus, following *Coleman*, this Court finds that Gartner is not precluded from pursuing this theory at summary judgment.

SYCR's second argument, by contrast, merits more discussion. Under California law, a joint venture "is an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *Nelson v. Abraham*, 29 Cal.2d 745, 749 (1947). The elements necessary for its creation are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control. *County of Riverside v. Loma Linda Univ.*, 118 Cal. App. 3d 300, 313, 173 Cal. Rptr. 371 (1981). In recent years, however, courts have emphasized only the first and third elements. *See, e.g., Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 177-78, 107 Cal. Rptr. 2d 209 (2001); *6 Witkin, Summary of Cal. Law (10th ed. 2005)*. Ultimately, though, whether a joint venture actually exists depends on the intention of the parties. *Loma Linda University*, 118 Cal. App. 3d at 313.

Gartner has produced sufficient evidence to survive this Motion for Summary Judgment. As for the first element, Gartner has introduced evidence that SYCR and the VP Defendants sought to profit from the formation of SGS. *See Feuchter Depo.*, 87:2-16. And with regard to the third element, Gartner has introduced evidence that Parikh supplied trade secrets to SYCR while SYCR supplied legal advice and insurance to the VP Defendants and SGS. *See, e.g.*, *Deposition of Shivbir Grewal*, 47:15-49.3. This evidence of joint participation raises a genuine issue of fact on the issue of control. *See Rosen v. E.C. Losch Co.*, 234 Cal. App. 2d 324, 332, 44 Cal. Rptr. 377 (1965) (noting that it is a well-established principal that "there may be joint participation in the management and control of a joint venture where the contributions of the respective parties to the enterprise are unequal and not of the same character"); *see also Oakley v. Rosen*, 76 Cal. App. 2d 310 (1946) (finding that a joint venture was created where there was an agreement under which one party was to produce a play and the other party to provide merely the necessary finances, and there was to be a sharing of any profits).

Based on the foregoing, this Court finds that a genuine issue of fact for trial exists on Gartner's joint venture theory. Accordingly, SYCR's Motion for Summary Judgment is DENIED insofar as it relates to this theory.

    3.    <u>Agency Theory</u>

Gartner contends that the VP Defendants acted as SYCR's agents for two reasons. First, Gartner argues that the VP Defendants and SYCR became agents of one another by operation of law. Second, Gartner argues that the evidence supports a finding that there is sufficient evidence

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK #89/96

CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

to raise a genuine issue of fact exists on whether such a relationship existed.

Gartner has guided this Court to two California decisions in which the California Supreme Court held that "each member of the joint venture is the agent of the others in transaction of its business." *Eng'g Serv. Corp. v. Longridge Inv. Co.*, 153 Cal. App. 2d 404, 411 (1957); *Leming v. Oilfields Trucking Co.*, 44 Cal. 2d 343, 350 (1955). SYCR has failed to cite any authority that would otherwise limit this broad rule. Accordingly, this Court finds that because a genuine issue of fact for trial exists on Gartner's joint venture theory, it necessarily follows that a genuine issue of fact for trial exists on Gartner's agency theory. Moreover, as these cases dispose of the issue at hand, there is no further need to address Gartner's second argument.

Therefore, SYCR's Motion for Summary Judgment is DENIED insofar as it relates to Gartner's agency theory.

IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. Specifically, the Court:

1. DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Fifth Claim for Relief (tortious interference with contractual relations);

2. DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Sixth Claim for Relief (unfair trade practices);

3. DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Eighth Claim for Relief (tortious interference with prospective economic advantage);

4. DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Twelfth Claim for Relief (UTSA violation);

5. GRANTS SYCR's Motion for Summary Judgment as it relates to any vicarious liability attaching under a conspiracy theory; and,

6. DENIES SYCR's Motion for Summary Judgment as it relates to any vicarious liability attaching under

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**LINK #89/96**

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2039-PSG | Date | October 14, 2008 |
|---|---|---|---|
| Title | Gartner, Inc. v. Kevin Parikh et al. | | |

    a.    a joint venture theory, or

    b.    an agency theory.